Bradley S. Shelts (Bar No. 028206)
Joshua P. Weiss (Bar No. 035073)
**BRUECKNER SPITLER SHELTS PLC**
8355 East Hartford Drive, Suite 200
Scottsdale, Arizona 85255
(480) 483-9600
BShelts@bss.law
JWeiss@bss.law

**EPSTEIN BECKER & GREEN, P.C.**
Anthony Argiropoulos (Pro Hac Vice application forthcoming)
150 College Road West, Suite 301
Princeton, New Jersey 08540
(609) 455-1540
AArgiropoulos@ebglaw.com

Kevin T. Elkins (Pro Hac Vice application forthcoming)
1222 Demonbreun St., Suite 1400
Nashville, TN 37203
(615)-564-6060
kelkins@ebglaw.com

*Attorneys for Plaintiff Fortitude Surgery Center, LLC*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Fortitude Surgery Center, LLC, | Case No: |
| Plaintiff, | **COMPLAINT AND JURY DEMAND** |
| vs. | |
| United Healthcare Services, Inc., and United Healthcare Insurance Company, | |
| Defendants. | |

This action arises out of United Healthcare Services, Inc.'s ("UHS") and United Healthcare Insurance Company's ("UHIC") (collectively, "United") continuous and systematic denial of healthcare reimbursement claims for medically necessary services

1

which were administered to patients insured by United or those for which United administers self-funded ERISA plans. United's conduct is another example in a pattern of retributive behavior for perceived disputes between United and certain of Fortitude's owners arising out of reimbursement claims from unrelated pain management provider entities. For its Complaint, Plaintiff Fortitude Surgery Center, LLC ("Fortitude"), asserts, complains, and alleges as follows:

**PARTIES**

1.     Fortitude is a surgery center that provides medical services to Arizona patients. It is a limited liability company organized and existing under the laws of the State of Arizona, with its principal places of business in Maricopa County, Arizona.

2.     Defendant United Healthcare Services, Inc. is a corporation organized under the laws of Minnesota, with its principal place of business in Minnesota, and administers health benefit plans, including plans funded by plan sponsors.

3.     Defendant United Healthcare Insurance Company is a Connecticut corporation with its principal place of business in Connecticut, and fully insures and administers health benefit plans.

4.     Fortitude is appropriately licensed and in good standing with the State of Arizona Department of Health.

5.     Fortitude has standing to bring ERISA claims pursuant to valid, written assignments of benefits signed by patients prior to treatment.

**JURISDICTION AND VENUE**

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that some of the claims asserted herein are brought under federal statutes

1    and necessarily involve adjudication of one or more federal questions.

2        7.    For Plaintiff's ERISA claims, jurisdiction additionally arises under § 502(e)

3    of ERISA, 29 U.S.C. § 1132(e).

4        8.    This Court has supplemental jurisdiction over Plaintiff's state law claims

5    under 28 U.S.C. § 1367.

6        9.    This Court has personal jurisdiction over the parties because Plaintiff

7    operates its business in this District and United systematically and continuously conducts

8    business in Arizona and otherwise has minimum contacts with the District of Arizona

9    sufficient to establish personal jurisdiction over each of them.

10        10.    Venue is appropriately established in this Court under 28 U.S.C. § 1391 and

11    29 U.S.C. § 1132(e)(2) because United conducts a substantial amount of business in the

12    District of Arizona, including marketing, advertising and selling insurance products, and

13    administering health plans inside the District of Arizona. Moreover, the claims at issue in

14    this action arise out of United's misconduct which occurred in this District.

15                  **SUMMARY OF ALLEGATIONS**

16        11.    At all relevant times, Fortitude has been a licensed healthcare facility where

17    patients ("United Members") who receive their health insurance from United, or from self-

18    funded ERISA plans for whom United provides administrative services, received treatment

19    from licensed healthcare providers.

20        12.    The basis for this action is United's repeated violation of the Employee

21    Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002 *et seq*., and the

22    laws of the State of Arizona by and through its improper and serial denial of benefit

23    payment claims billed by Fortitude to United for medically necessary services that United

preauthorized (where necessary) and that Fortitude provided to the United Members, each of whom validly and in writing assigned his or her benefits claims to Fortitude (the "Unpaid Claims").

**FACTS**

13.    Upon information and belief, United offers health insurance plans that differentiate between coverage for medical treatment provided by (i) in-network providers who have negotiated discounted rates with the insurer, and (ii) out-of-network providers who submit claims to United at their billed charges.

14.    Fortitude has not contracted with United and, accordingly, is considered to be an out-of-network provider.

15.    Fortitude has provided medical services to United's subscribers.

16.    Upon information and belief, the United health insurance plans at issue in this action (each a "Plan" and collectively the "Plans") permit United's subscribers to obtain healthcare from out-of-network providers such as Fortitude.

17.    United, the country's largest commercial health insurance company, upon information and belief, engages in a nationwide pattern and practice of intentionally underpaying frontline healthcare providers to boost its profits.

18.    In June 2021, United HealthCare Insurance announced a new policy by which it could retroactively deny coverage for emergency room visits it believed were not actually emergencies. *See* Nona Tepper, *United unveils policy to retroactively deny patient ED claims*, Modern Healthcare (June 4, 2021), https://www.modernhealthcare.com/payment/unitedunveils-policy-retroactively-deny-patient-ed-claims. After public outcry, United delayed its implementation of this policy.

1    *See How we're assessing emergency department facility commercial claims*, United

2    Healthcare (June 2021),

3    https://www.uhcprovider.com/en/resourcelibrary/news/2021-network-bulletin-featured-

4    articles/0621-ed-facility-commercialclaims.html.

5         19.    In August 2021, United HealthCare Insurance and another UnitedHealth

6    Group subsidiary agreed to pay over $15 million to settle allegations by the U.S.

7    Department of Labor that they wrongfully reduced reimbursements for out-of-network

8    mental health services. *See United Behavioral Health, United Healthcare Insurance Co.*

9    *Plans to Pay $15.6m, Take Corrective Actions After Federal, State Investigations*, U.S.

10   Department of Labor (Aug. 12, 2021),

11   https://www.dol.gov/newsroom/releases/ebsa/ebsa20210812. That same month, it was

12   revealed that United had worked behind the scenes to shape an influential study by Yale

13   researchers blaming private-equity-backed provider groups for high out-of-network costs.

14   *See* Rose Adams, *UnitedHealthcare Guided Yale's Groundbreaking Surprise Billing*

15   *Study*, The Intercept (Aug. 10, 2021),

16   https://theintercept.com/2021/08/10/unitedhealthcare-yale-surprise-billing-study/. Based

17   in part on this evidence, a Nevada jury found United guilty of "oppression, fraud, and

18   malice" in underpaying a provider group's emergency room doctors and awarded the group

19   $60 million in punitive damages against United. *See* Jeff Lagasse, *Jury orders*

20   *UnitedHealthcare to pay TeamHealth more than $60M for underpaying clinicians*,

21   Healthcare Finance (Dec. 8, 2021), https://www.healthcarefinancenews.com/news/jury-

22   orders-unitedhealthcare-pay-teamhealth-more-60m-underpaying-clinicians.

23        20.    United's pattern of misconduct has reportedly earned it the nickname "evil

1   empire" among some practitioners. *See* Nona Tepper, *UnitedHealthcare pays providers*
2   *below standard rates for COVID-19 vaccines*, Modern Healthcare (Sept. 3, 2021),
3   UnitedHealthcare pays providers below standard rates for COVID-19 vaccines | Modern
4   Healthcare; *see also* https://www.govinfo.gov/content/pkg/CREC-2022-01-
5   20/html/CREC-2022-01-20-pt1-PgS375-6.htm                ("Among        pediatric      circles,
6   UnitedHealthcare is often referred to as the 'evil empire' since they are the least transparent
7   and least cooperative among the major insurers, said Dr. Peter Pogacar, vice president of
8   the Rhode Island chapter of the AAP and a pediatrician at East Greenwich Pediatrics.").

9                               **Fortitude's Operations**

10      21.    At relevant times, Fortitude provided medical care to patients with Plans
11  administered by United.

12      22.    Although Fortitude is not "in-network" with United, it has gone through a
13  "credentialing" process with United whereby United has requested and Fortitude has
14  provided various information about Fortitude including information regarding training,
15  licensure, tax identification number, and certifications and/or registrations in particular
16  healthcare fields.

17      23.    By and through its credentialing process, United evaluated whether Fortitude
18  met United criteria relating to licensing, professional competence, and conduct and
19  collected and stored for future reference virtually all the information necessary to
20  understand the type of facility Fortitude operates, how that facility is licensed by state and
21  federal government, and the services it offers to United Members.

22                        **Pre-treatment and Billing Procedures**

23      24.    With respect to each of the Unpaid Claims, the United Member received

medically necessary, non-surgical services (principally pain management services) from medical providers at Fortitude.

25.    For each of the Unpaid Claims, Fortitude followed a substantially identical process prior to and after treatment was provided to the United Member, the purpose of which was to ensure that Fortitude would be paid for the services rendered to the United Member.

26.    Because Fortitude is not privy to the terms and provisions of a United Member's Plan when approached by a United Member seeking treatment, Fortitude requests and relies upon certain information from United to determine whether it will agree to treat the United Member.

27.    For each of the Unpaid Claims, Fortitude contacted United prior to providing medical treatment to verify that the United Member was in fact covered by a plan insured or administered by United and to confirm that the plan provided out-of-network benefits for the type of treatment the United Member sought to obtain.

28.    United, either on behalf of itself or the self-funded plans, informed Fortitude that the United Member was covered and had out-of-network benefits for the type of treatment the United Member sought to obtain.

29.    If United had not confirmed the United Member was insured and had out-of-network benefits covering the treatment the United Member sought, Fortitude would not have provided services in connection with any of the Unpaid Claims or, alternatively, would have required the United Member to pay cash in advance for his or her treatment.

30.    In addition to confirming the existence of out-of-network coverage for the treatment the United Member sought, Fortitude also sought authorization from United to

7

provide such treatment during its pre-treatment communications with United in connection with each of the Unpaid Claims.

31.    United, either on behalf of itself or the self-funded plans, either authorized Fortitude to provide treatment or informed Fortitude that no authorization was necessary.

32.    Based on the pre-treatment communications with United with respect to each of the Unpaid Claims, each relevant United Member was associated with an insurance plan that provided for payment of out-of-network benefits with respect to each of the Unpaid Claims.

33.    Fortitude would not have provided services in connection with the Unpaid Claims if United had not authorized treatment or confirmed that no such authorization was required.

34.    As a condition of receiving care at Fortitude Surgery Center in connection with each Unpaid Claim, the United Member knowingly, willingly, validly, and in writing assigned his or her benefits to Fortitude, which states, in relevant part, that the United Member conveys:

> **I hereby convey to the above named provider(s), to the full extent permissible under the laws, including but not limited to, ERISA §502(a)(1)(B) and §502(a)(3), under any applicable employee group health plan(s), insurance policies or public policies, any benefit claim, liability or tort claim, chose in action, appropriate equitable relief, surcharge remedy or other right I may have to such group health plans, health insurance issuers or tortfeasor insurer(s), with respect to any and all medical expenses legally incurred as a result of the medical services I received from the above named provider(s), and to the full extent permissible under the laws to claim or lien such medical benefits, settlement, insurance reimbursement and any applicable remedies, including, but are not limited to, (1) obtaining information about the claim to the same extent as the assignor, (2) submitting evidence; (3) making statements about**

**facts or law; (4) making any request, or giving, or receiving any notice about appeal proceedings; and (5) any administrative and judicial actions by such provider(s) to pursue such claim, chose in action or right against any liable party or employee group health plan(s), including, if necessary, bring suit by such provider(s) against any such liable party or employee group health plan in my name with derivative standing but at such provider(s) expenses. Unless revoked, this assignment is valid for all administrative and judicial reviews under PPACA, ERISA, Medicare and applicable federal or state laws.**

35.    Such assignments, which are standard in the industry, were intended to authorize and did authorize Fortitude to, among other things, obtain information from United, including the information discussed above regarding coverage and authorization, and to bill United, collect benefit payments originally due to the United Member from United for Fortitude's services, and to enforce the United Member's rights in connection with his or her Plan.

36.    Because Fortitude and not the United Member himself/herself, contacted United to verify the United Member's out-of-network benefits and to obtain authorization, United knew or should have known that the United Member had assigned his/her benefits to Fortitude in connection with each Unpaid Claim before Fortitude actually rendered treatment to the United Member.

37.    At no time during these pre-treatment communications did United notify Fortitude that the United Member's Plan prohibited the United Member from assigning his or her benefits to Fortitude or that United would refuse to honor any of the Unpaid Claims on the basis that the United Member had impermissibly assigned his or her benefit claims to Fortitude.

38.    Had United informed Fortitude that the Plans prohibited assignment, or that

9

United would refuse to honor such claims on the basis that the United Member had impermissibly assigned his or her benefit claims, Fortitude would not have provided services or, alternatively, would have required the United Member to pay cash in advance for his or her treatment.

39.    With respect to each Unpaid Claim, the billing form submitted to United as part of the claim submission process included a section which expressly indicated that the United Member had assigned his or her benefits to Fortitude.

40.    Thus, for each Unpaid Claim, United was apprised of and knew that the United Member had assigned his or her benefit claims to Fortitude when United confirmed coverage and authorized treatment and when United rendered a determination as to whether it would pay such claims.

41.    United did not object or otherwise question the United Members' assignments to Fortitude, nor did United inform Fortitude or the United Members that United would refuse to pay for the pre-authorized, necessary medical services on any other grounds.

42.    For each Unpaid Claim, Fortitude provided treatment to the United Member in reliance upon: (a) United's confirmation that the United Member was covered by a Plan with out-of-network benefits; (b) United's representation that Fortitude was authorized to provide treatment if such authorization was necessary; and (c) United's failure to raise any basis, founded on the terms of the United Member's Plan or otherwise, indicating that United may refuse to make payment to Fortitude for such services.

43.    In short, based on United's conduct prior to Fortitude's treatment of a United Member in connection with each of the Unpaid Claims, Fortitude reasonably understood

1   and expected that United would pay Fortitude for such services.

2       44.    As a result, Fortitude expended valuable resources, supplies, and employee

3   time, and incurred other expenses in connection with the services it provided to each United

4   Member.

5                              **United Stops Paying**

6       45.    For each of the Unpaid Claims, Fortitude, or a billing company working on

7   its behalf, submitted a bill to United.

8       46.    Notwithstanding United's representations to Fortitude that the United

9   Members were covered and that Fortitude was authorized to provide medical treatment (if

10  authorization was necessary), United began serially denying payment on the Fortitude bills.

11      47.    Prior to denying these claims, United did not inform Fortitude or the United

12  Members that United would refuse to pay for the medical services provided by Fortitude.

13      48.    United's EOBs/denials did not inform Fortitude or the United Members that

14  United was refusing (or would in the future refuse) to pay for the medical services provided

15  by Fortitude on any other basis.

16      49.    Upon information and belief, United denied the Unpaid Claims not because

17  of any lack of medical necessity, but instead because Fortitude has common ownership

18  with certain other pain management providers in the Phoenix area which had additional

19  disputed unpaid claims with United.

20      50.    United's dispute with those other independent pain management providers is

21  now the subject of the lawsuit captioned *United Healthcare Services Inc. et al. v. Advanced*

22  *Reimbursement Solutions LLC et al.*, Case No. 2:21-cv-1302 (D. AZ.).

23      51.    Upon information and belief, Fortitude was "flagged" based upon certain

11

common ownership, and because of that common ownership, United decided to flatly and improperly deny the Unpaid Claims.

## ERISA Claims

52.     People who receive their health insurance through a private employment-based benefit plan are typically participants or beneficiaries of plans governed by ERISA, 29 U.S.C. § 1001 et seq. Sometimes ERISA plans are fully insured by health insurers such as United. Sometimes the plan is self-funded, in which case the plan is financially responsible for the claims arising from that plan.

53.     Fortitude is informed and believes that United is the ERISA plan administrator and ERISA fiduciary for the ERISA claims at issue in this Complaint (the Unpaid Claims), or is otherwise a proper ERISA defendant because it "effectively controlled the decision whether to honor or to deny a claim ..." *Cyr v. Reliance Standard Life Ins. Co.,* 642 F.3d 1202, 1204 (9th Cir. 2011) and because it "improperly den[ied] or cause[d] improper denial of benefits." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.,* 770 F.3d 1282, 1297 (9th Cir. 2014).

54.     Upon information and belief, with respect to the self-insured ERISA plans at issue herein, other payors enter into agreements with United to perform administrative and other key responsibilities such as: (a) certifying or authorizing providers' provision of services to members; (b) receiving providers' claims; (c) pricing the claims; (d) processing and administering the claims and appeals; (e) approving or denying the claims; (f) directing whether and how to pay the claims; (g) issuing remittance advices and explanations of benefits; (h) communicating with providers regarding the claims and services; (i) communicating with members regarding the claims and services; and (j) in many instances

1  issuing payment. On information and belief, these agreements are structured such that

2  United has a financial incentive to keep benefit costs to the funding entity low.

3          55.    On information and belief, United functions as an ERISA plan administrator

4  with respect to those claims upon which it has exercised delegated authority to provide

5  plan documents to participants and beneficiaries, receive benefit claims, evaluate and

6  process those claims, review the terms of the plan, make initial benefit determinations,

7  make and administer benefit payments, handle appeals of benefit determinations, and serve

8  as the primary point of contact for members and providers to communicate regarding

9  benefits and benefit determinations.

10         56.    In carrying out these ERISA plan administrator functions, United possesses

11  authority and fiduciary discretion to manage and administer the other payors' ERISA plans.

12         57.    Upon information and belief, no provisions in United's or the other payors'

13  benefit plans, whether in their Summary Plan Descriptions or Evidences of Coverage,

14  justified the failure to pay for the medical services provided by Fortitude to the United

15  Members.

16         58.    The formal mechanism for a health plan or plan administrator to explain why

17  a claim is denied (meaning that the allowed amount is anything less than full billed charges)

18  is an Explanation of Benefits ("EOB"). United was required to issue EOBs in conformance

19  with 29 U.S.C. § 1133 as implemented by 29 C.F.R. § 2560.503-1. Specifically, under 29

20  C.F.R. § 2560.503-1(g), it was required to:

21              . . . provide a claimant with written or electronic notification of
               any adverse benefit determination. Any electronic notification
22              shall comply with the standards imposed by 29 CFR
               2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set
23              forth, in a manner calculated to be understood by the claimant

13

–
(i)    The specific reason or reasons for the adverse determination;

(ii)    Reference to the specific plan provisions on which the determination is based;

(iii)    A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv)    A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v)    In the case of an adverse benefit determination by a group health plan or a plan providing disability benefits,

(A)    If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request; or

(B)    If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

59.    When each of the Unpaid Claims was denied, United serially failed to adequately explain the basis for its decision in a manner that could be understood. In violation of applicable ERISA regulations, United's EOBs failed to state the specific and/or actual reasons for its failure to pay claims, failed to provide any of the details required by the law (including the specific plan provisions purportedly justifying its failure to pay), and failed to request more information if needed as required by law.

60.    The same is true for appeals. While United's failure to comply with the

14

ERISA regulations when issuing EOBs means that Fortitude had no duty to appeal, Fortitude did typically file and pursue appeals of denied claims to which United's responses were equally deficient. Appeal response letters are subject to parallel requirements as EOBs. 29 C.F.R. § 2560.503-1(j). *See Ellis v. Met. Life Ins. Co.*, 126 F.3d 228, 237 (4th Cir. 1997) ("The notice requirement for the decision on review must be every bit as explicit as an initial denial notice in terms of providing specific reasons for the continued denial and specific references to the pertinent plan provisions."). Yet, United's appeal denial letters were just as non-compliant as its EOBs.

61.     To the extent there are any Unpaid Claims that were not fully appealed, in light of United's grievous breach of its obligations (including, but not limited to, United's insufficient EOBs and appeal responses) and systematic failures, the ERISA regulations provide that the claimants "shall be deemed to have exhausted the administrative remedies under the plan ..." 29 C.F.R. § 2560.503-1(l). Similarly, for the same reason, any appeals by Fortitude would have been futile.

### CAUSES OF ACTION

### CAUSE OF ACTION ONE

**(Enforcement Under 29 U.S.C. § 1132(a)(1)(B)**

**For Failure to Pay ERISA Plan Benefits)**

62.     Fortitude incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

63.     Fortitude alleges this claim for relief in connection with claims for treatment rendered to United Members covered by self-funded health benefits plans governed by ERISA. This is a claim to recover benefits, enforce rights, and clarify rights to benefits

15

1    under 29 U.S.C. § 1132(a)(1)(B).

2        64.    When a Plan is insured by, funded by, or administered by United, United

3 must pay benefits to United Members or their assignees pursuant to the Plan's terms,

4 including payments for out-of-network services pursuant to the methodology set forth in

5 the United Member's Plan.

6        65.    For each of the Unpaid Claims involving a United Member with a Plan

7 governed by ERISA, Fortitude is entitled assert a claim to recover benefits, enforce rights

8 and clarify rights to benefits under the terms of the United Member's ERISA Plan pursuant

9 to 29 U.S.C. § 1132(a)(1)(B).

10        66.    Fortitude has standing to assert such claims as the United Members'

11 authorized assignee in connection with the services provided such Members.

12        67.    Fortitude is informed and believes that each of the ERISA Plans at issue in

13 connection with the Unpaid Claims required United and the ERISA plans to pay for the

14 medical services that Fortitude provided to the United Member.

15        68.    United has breached these ERISA plan provisions by failing to provide the

16 United Members or their assignees the benefits due to them under the terms of their Plans

17 and by arbitrarily denying payment to Fortitude for the services rendered to the United

18 Members, without justification and in derogation of the Plans' express terms.

19        69.    As a result of United's nonpayment of benefits, it is liable to Fortitude for

20 the difference between what should have been paid and the amounts that were actually

21 paid, if any, plus applicable interest and attorneys' fees, pursuant to 29 U.S.C. § 1132(g)(1)

22 and any other applicable law, rule, or regulation.

23

1

## CAUSE OF ACTION TWO

2

### (Breach of Contract)

3      70.     Fortitude incorporates all allegations set forth in the above paragraphs as

4   though fully set forth herein.

5      71.     This Cause of Action applies to claims governed by state law and does not

6   apply to any Unpaid Claims associated with health insurance plans governed by ERISA.

7      72.     Each of the United Members with Non-ERISA Plans (the "Non-ERISA

8   United Members") is party to a valid and enforceable health insurance contract with United

9   which requires United to pay for authorized and medically necessary services rendered by

10  a licensed healthcare professional.

11     73.     By, among other things, paying premiums, each of the Non-ERISA United

12  Members provided good and valuable consideration to United in exchange for United's

13  delivery of the benefits set forth in his or her health insurance contract with United,

14  including benefits covering out-of-network services at facilities such as Fortitude Surgery

15  Center.

16     74.     Fortitude is the authorized assignee of each Non-ERISA United Member's

17  rights and benefits under his or her health insurance contract with United and is therefore

18  entitled to assert a claim for United's breach of those assigned contract rights.

19     75.     The Non-ERISA United Members sought and received medically necessary

20  services from Fortitude, and Fortitude sought and received (where necessary) prior

21  authorization from United for such services.

22     76.     Both the Non-ERISA United Members and Fortitude fully performed all

23  their obligations under the health insurance contracts with United, or, to the extent they

1  failed to perform any such obligation, such failure is excused by United's own failure to

2  perform or was waived by United.

3  77.   In material breach of its obligations under the Non-ERISA United Members'

4  health insurance contracts' terms regarding payment of out-of-network healthcare costs,

5  United has categorically and serially failed and refused to pay for the services rendered by

6  Fortitude to the Non-ERISA United Members in connection with the Unpaid Claims.

7  78.   Fortitude has been damaged by United's material breaches in that Fortitude,

8  as the Non-ERISA United Member's assignee, received none of the benefits or payments

9  United contracted to provide in connection with services rendered to the Non-ERISA

10  United Members.

11  79.   Accordingly, Fortitude is entitled to and seeks damages in an amount to be

12  determined at trial, together with attorneys' fees, costs, expenses, and pre- and post-

13  judgment interest on all amounts awarded at the maximum rate permitted by law.

14  **CAUSE OF ACTION THREE**

15  **(For Breach of the Implied Covenant of Good Faith and Fair Dealing)**

16  80.   Fortitude incorporates all allegations set forth in the above paragraphs as

17  though fully set forth herein.

18  81.   This Cause of Action applies to claims governed by state law and does not

19  apply to any Unpaid Claims associated with health insurance plans governed by ERISA.

20  82.   Each of the Non-ERISA United Members is party to a valid and enforceable

21  health insurance contract with United, each of which contains an implied covenant of good

22  faith and fair dealing.

23  83.   Each such Non-ERISA United Member has validly assigned his or her rights

18

and benefits to Fortitude as a condition of receiving treatment at Fortitude Surgery Center.

84.    Prior to treating each of the Non-ERISA United Members, United confirmed the Non-ERISA United Member was covered by a plan with United and either authorized service or indicated no authorization was necessary.

85.    As a result, each Non-ERISA United Member (and Fortitude, as their assignee) reasonably expected and anticipated that United would pay claims submitted by Fortitude for such medical treatment pursuant to the terms of the Non-ERISA United Member's contract with United.

86.    United's decision not to pay the Unpaid Claims involving Non-ERISA United Members has been based not on terms excluding coverage in the Non-ERISA United Members' contracts with United, but rather on United's unjustified and undisclosed application of United's own alleged internal policies.

87.    United has systematically and arbitrarily applied its alleged policies to all Unpaid Claims involving Non-ERISA United Members who received medical services at Fortitude Surgery Center.

88.    United knew or should have known there was no basis for denying the claims submitted by Fortitude as the assignee of Non-ERISA United Members' benefits and rights.

89.    Through its intentional conduct described herein, United has failed to act in good faith and has deliberately and unfairly deprived Non-ERISA United Members (and Fortitude, as their assignee) of their expected benefits and reasonable expectations under each of their contracts with United.

90.    Through its intentional conduct described herein, United has breached the

1    implied covenant of good faith and fair dealing.

2    91.    As a direct and proximate result of United's breach of the implied covenant

3    of good faith and fair dealing, Non-ERISA United Members (and Fortitude, as their

4    assignee) have been damaged in an amount to be proven at trial.

5    92.    Accordingly, Fortitude is entitled to and seeks damages in an amount to be

6    determined at trial, together with attorneys' fees, costs, expenses, and pre- and post-

7    judgment interest on all amounts awarded at the maximum rate permitted by law.

8    **CAUSE OF ACTION FOUR**

9    **(For Unjust Enrichment)**

10    93.    Fortitude incorporates all allegations set forth in the above paragraphs as

11    though fully set forth herein.

12    94.    This Cause of Action applies to claims governed by state law and as an

13    alternative to Fortitude's other causes of action and does not apply to any Unpaid Claims

14    associated with health insurance plans governed by ERISA.

15    95.    For Unpaid Claims submitted under Non-ERISA Plans, United has been

16    unjustly enriched by failing and refusing to pay the amounts due and owing to Fortitude

17    for services they provided to Non-ERISA United Members.

18    96.    United received a benefit by receiving premiums and other consideration

19    from the Non-ERISA United Members, which in turn allowed the Non-ERISA United

20    Members to receive valuable medical care from Fortitude with the expectation, by both the

21    Non-ERISA United Members and Fortitude, that United would pay the benefits it agreed

22    to pay in exchange for the premiums and consideration provided.

23    97.    Fortitude has been impoverished by providing valuable treatment to the Non-

1    ERISA United Members with the expectation of payment, only to be systematically and

2    arbitrarily denied such payment by United. In providing such care, Fortitude incurred costs

3    associated with the use and consumption of materials and supplies, expenditure of

4    employee time and effort, and the cost of capital—all without receiving any payment for

5    its efforts, services, and investments.

6    98.    There is no justification for United's refusal to pay for the medical treatment

7    provided to Non-ERISA United Members, and it would be inequitable for United to retain

8    the benefits it has received under these circumstances.

9    99.    Should Fortitude's other causes of action fail for any reason, Fortitude will

10    not have been afforded an adequate remedy under law for United's unjust enrichment and

11    Fortitude's resulting impoverishment.

12    100.    Fortitude seeks and is entitled to an award of damages in an amount equal to

13    the value of the services Fortitude provided, in an amount to proven at trial, together with

14    attorneys' fees, costs, expenses, and pre- and post-judgment interest on all amounts

15    awarded at the maximum rate permitted by law.

16    **<u>CAUSE OF ACTION FIVE</u>**

17    **(For Promissory Estoppel)**

18    101.    Fortitude incorporates all allegations in the above paragraphs as though fully

19    set forth herein.

20    102.    This Cause of Action applies to claims governed by state law and does not

21    apply to any Unpaid Claims associated with health insurance plans governed by ERISA.

22    103.    Although Fortitude did not have a contract with United, United should

23    nonetheless be estopped to deny its promise to Fortitude in relation to the services the Non-

ERISA United Members received at Fortitude Surgery Center.

104.    As set forth herein, prior to providing services to any of the Non-ERISA United Members with Unpaid Claims, United confirmed to Fortitude that the Non-ERISA United Member was covered by a plan insured and/or administered by United, that such plan provided the Non-ERISA United Member with out-of-network benefits for the services, and that Fortitude was authorized to provide such services if authorization was required.

105.    United did not notify Fortitude, prior to Fortitude providing services to the Non-ERISA United Members with Unpaid Claims, that United would not honor its obligation to pay for a portion of the cost associated with such services.

106.    To the contrary, through its representations to Fortitude and by omitting any basis for which United might refuse to pay for such services, United made a promise that if Fortitude provided such services for the benefit of United's Members, United would pay for such services in accordance with its obligations under the Non-ERISA United Member's Plan.

107.    United's promises made in connection with services Fortitude provided to the Non-ERISA United Members was further reinforced by United's payment of substantially similar claims Fortitude submitted to United for services rendered to United Members.

108.    United unequivocally knew that Fortitude would rely upon United's representations and promises in agreeing to provide services to the Non-ERISA United Members.

109.    Indeed, the purpose of each pre-treatment communication Fortitude had with

1  United was to confirm that United would pay Fortitude for the services Fortitude rendered

2  to the Non-ERISA United Member.

3      110.    Fortitude actually relied on United's promises to its detriment, by providing

4  services to the Non-ERISA United Members in connection with the Unpaid Claims for

5  which it has received no compensation.

6      111.    Furthermore, as alleged herein, Fortitude would not have provided such

7  services or would have required the Non-ERISA United Member to pay cash in advance

8  for his or her services but for United's promise to pay Fortitude.

9      112.    Fortitude's reliance on United's promises was reasonable because, among

10  other things, Fortitude sought authorization and confirmation of coverage and payment

11  prior to providing services to Non-ERISA United Members for the specific purpose of

12  obtaining confirmation that United would pay Fortitude in exchange for the services

13  requested by the Non-ERISA United Members, and in light of United's previous practice

14  of paying such claims submitted by Fortitude.

15      113.    Fortitude seeks and is entitled to an award of damages in an amount equal to

16  the value of the services Fortitude provided, in an amount to proven at trial, together with

17  attorneys' fees, costs, expenses, and pre- and post-judgment interest on all amounts

18  awarded at the maximum rate permitted by law.

19                         **CAUSE OF ACTION SIX**

20                      **(For Negligent Misrepresentation)**

21      114.    Fortitude incorporates all allegations in the above paragraphs as though fully

22  set forth herein.

23      115.    This Cause of Action applies to claims governed by state law and does not

23

apply to any Unpaid Claims associated with health insurance plans governed by ERISA.

116.    United provided Fortitude with false or incorrect information or omitted or failed to disclose material information to Fortitude relating to United's intention to pay for the services Fortitude provided to the Non-ERISA United Members with Unpaid Claims.

117.    As set forth herein, prior to providing treatment to the Non-ERISA United Members with Unpaid Claims, United confirmed to Fortitude that the Non-ERISA United Member was covered by a plan insured and/or administered by United, that such plan provided the Non-ERISA United Member with out-of-network benefits for the treatment, and that Fortitude was authorized to provide such treatment if authorization was required.

118.    United did not notify Fortitude, prior to Fortitude providing services to the Non-ERISA United Members with Unpaid Claims, that United would not honor its obligation to pay for a portion of the cost associated with such treatment.

119.    To the contrary, through its representations to Fortitude and by omitting any basis for which United might refuse to pay for such treatment, United represented that it would pay for such services in accordance with its obligations under the Non-ERISA United Member's Plan.

120.    United intended that Fortitude rely on its false or incorrect information and material omissions by, among other things, providing services to the Non-ERISA United Members, and United provided such false or incorrect information and material omissions for that purpose.

121.    United, as the insurer and/or administrator of the Non-ERISA United Member's Plans, failed to exercise reasonable care in communicating information to Fortitude by withholding material information from Fortitude, misleading Fortitude, and

1   falsely informing Fortitude of information in order to induce Fortitude to provide treatment

2   to the Non-ERISA United Members under the assumption that United would pay Fortitude

3   for such treatment.

4      122.   Fortitude reasonably and justifiably relied on United's false or incorrect

5   information and material omissions to its detriment, which information Fortitude sought in

6   order to confirm United would pay for services rendered to the Non-ERISA United

7   Members.

8      123.   Fortitude's reliance was particularly reasonable and justified in light of

9   United's payment of substantially similar claims Fortitude submitted to United for services

10  rendered to other United Members.

11     124.   As a direct and proximate result of United's material negligent

12  misrepresentations and omissions, Fortitude has been damaged in an amount to be proven

13  at trial, together with attorneys' fees, costs, expenses, and pre- and post-judgment interest

14  on all amounts awarded at the maximum rate permitted by law.

15  **<u>CAUSE OF ACTION SEVEN</u>**

16  **(Violation of Arizona's Prompt Pay Statute)**

17     125.   Fortitude incorporates the allegations made in each of the foregoing

18  paragraphs as though those allegations are set forth fully herein.

19     126.   A.R.S. § 20-3102 requires prompt payment of properly submitted claims and

20  provides for interest on late payments.

21     127.   Fortitude provided services to patients insured by United (as applicable) and

22  in doing so have been damaged by the withholding of payments beyond the statutory time

23  limit on properly submitted claims.

128.     Accordingly, Fortitude seeks damages as permitted by Arizona's prompt pay statute in an amount to be determined at trial, together with costs and pre- and post-judgment interest on all amounts awarded at the maximum rate permitted by law.

### CAUSE OF ACTION EIGHT

**(Breach of Implied Contract)**

129.     Fortitude incorporates the allegations made in each of the foregoing paragraphs as though those allegations are set forth fully herein.

130.     This Cause of Action applies to claims governed by state law and does not apply to any Unpaid Claims associated with health insurance plans governed by ERISA.

131.     At all material times, United knew that Fortitude provided services to patients including United's Non-ERISA Members.

132.     As a result of being an out-of-network provider, there was a meeting of the minds between United and Fortitude that Fortitude would submit claims, and United would reimburse claims, in accordance with United's policies and procedures applicable to all other out-of-network providers.

133.     As a result, an implied-in-fact contract was created that Fortitude would be reimbursed at the applicable out-of-network rate for the provision of care to United's Non-ERISA Members.

134.     The Non-ERISA United Members sought and received medically necessary services from Fortitude, and Fortitude sought and received (where necessary) prior authorization from United for such services.

135.     Through the parties' conduct and respective undertaking of obligations concerning services provided by Fortitude, the parties implicitly agreed, and Fortitude had

1    a reasonable expectation and understanding, that United would reimburse Fortitude for out-

2    of-network claims at rates in accordance with the standards acceptable under Arizona law

3    and in accordance with rates United pays for other substantially identical claims submitted

4    by other providers.

5         136.   Under Arizona common law, United by undertaking responsibility for

6    payment to Fortitude for the services rendered to Non-ERISA United Members, impliedly

7    agreed to reimburse Fortitude at rates, at a minimum, equivalent to the reasonable value

8    of the professional services provided.

9         137.   United, by undertaking responsibility for payment to Fortitude for the

10    services rendered to Non-ERISA United Members, impliedly agreed to reimburse

11    Fortitude at rates, at a minimum, equivalent to the usual and customary rate or alternatively

12    for the reasonable value of the professional services provided by Fortitude.

13         138.   In material breach of its obligations under the implied-in-fact contract

14    between Fortitude and United related to the payment of out-of-network healthcare costs,

15    United has categorically and serially failed and refused to pay for the services rendered by

16    Fortitude provided to the Non-ERISA United Members in connection with the Unpaid

17    Claims.

18         139.   At all material times, all conditions precedent have occurred that were

19    necessary for United to perform its obligations under its implied contract to pay Fortitude

20    for the out-of-network claims, at a minimum, based upon the "usual and customary fees in

21    that locality" or the reasonable value of Fortitude's services.

22         140.   Fortitude has been damaged by United's material breaches of the implied-in-

23    fact contract between Fortitude and United.

141.    Fortitude did not agree to provide services to Non-ERISA United Members without reimbursement.

142.    Accordingly, Fortitude is entitled to and seeks damages in an amount to be determined at trial, together with attorneys' fees, costs, expenses, and pre- and post-judgment interest on all amounts awarded at the maximum rate permitted by law.

## DEMAND FOR JURY TRIAL

Fortitude demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Fortitude requests that this Court enter judgment in its favor and against United (as applicable), and provide the following relief:

1.    For compensatory damages in an amount to be proven at trial, plus applicable pre- and post-judgment interest at the maximum rate permitted by law;

2.    For restitution in an amount to be proven at trial, plus applicable interest at the maximum rate permitted by law;

3.    For punitive damages;

4.    For attorneys' fees, costs, and expenses permitted by law; and,

5.    For such other relief as the Court deems just and appropriate.

Respectfully submitted this 1st day of October 2024.

**BRUECKNER SPITLER SHELTS PLC**

/s/ Joshua P. Weiss
Bradley S. Shelts
Joshua P. Weiss

1

2          **EPSTEIN BECKER & GREEN, P.C.**
           Anthony Argiropoulos (Pro Hac Vice
           Forthcoming)
3          150 College Road West, Suite 301
           Princeton, New Jersey 08540
4          (609) 455-1540
           AArgiropoulos@ebglaw.com
5
           Kevin T. Elkins (Pro Hac Vice
6          Forthcoming)
           1222 Demonbreun St., Suite 1400
7          Nashville, TN 37203
           (615)-564-6060
8          kelkins@ebglaw.com

9          *Attorneys for Plaintiff Fortitude Surgery
           Center*

10

11

12

13

14

15

16

17

18

19

20

21

22

23